**O**

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$16,284.00 IN U.S. CURRENCY,<br><br>Defendant. | Case No. 2:16-CV-08388-ODW (AFMx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT [32]** |

## I. INTRODUCTION

On November 10, 2016, the United States filed this action against $16,284.00 in U.S. Currency ("the defendant currency" or "the currency"). On October 12, 2017, the United States moved for entry of default judgment. (Mot., ECF No. 32.) For the reasons discussed below, the Court **GRANTS** the Motion.[1]

## II. FACTUAL BACKGROUND

In this civil forfeiture action, the Drug Enforcement Administration ("DEA") seized the defendant currency on July 15, 2016, during the execution of a warrant at the residence of Maria C. Diaz and Federico Diaz in Los Angeles, California.

---

[1] After carefully considering the papers filed in support of the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

(Compl. ¶¶ 5, 11, ECF No. 1.) Before executing the search warrant, the DEA intercepted telephone calls where a known drug trafficker instructed Federico Diaz "as to how to handle the proceeds from narcotics sales and to whom the narcotics should be distributed." (*Id.* ¶ 10.) The United States alleges that the currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it is traceable to the illegal proceeds of drug trafficking. (*Id.* ¶ 18.)

After seizing the currency, on November 21, 2016, the United States published the forfeiture on the official government forfeiture website. (ECF No. 11.) Maria Diaz filed a claim for the currency on December 22, 2016, and an Answer on April 4, 2017. (ECF Nos. 16, 19.) The United States moved to strike her pleadings for lack of standing. (ECF No. 25.) Diaz did not respond. On July 11, 2017, the Court ordered Diaz to "(a) File and serve an opposition to the Motion; or (b) File a written explanation with the Court as to why the Court should not rule on the Motion without hearing opposition." (Order to Show Cause, ECF No. 29.) After Diaz failed to oppose the Government's Motion or respond to the Court's Order, the Court struck her pleadings, and directed the Clerk to enter default. (ECF No. 30.) Federico Diaz did not file a claim before the deadline expired on December 23, 2016. (Almadani Decl. ¶ 9, ECF No. 43-1.)

Pursuant to Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions G(5)(a)(ii)(B) ("Supplemental Rules"), all interested parties who did not receive direct notice of the Complaint, were required to file a claim no later than 60 days after the United States published notice on its forfeiture website. (*See id.* ¶ 10.) This time has passed, and no interested parties filed a claim. (*Id.*) The Clerk entered default as to the interests of Maria Diaz, Federico Diaz, and all other potential claimants on July 18, 2017. (ECF No. 31.)

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter a default judgment after the Clerk enters a default under Rule 55(a). Before a court can

enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2. Local Rule 55-1 requires the movant to submit a declaration establishing: (1) when and against what party the default was entered; (2) the pleading to which the default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the notice has been served on the defaulting party, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion whether to grant a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court must consider several factors (the "*Eitel* Factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon entry of default, the defendant's liability generally is conclusively established, and the Court accepts the well-pleaded factual allegations in the complaint as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV. DISCUSSION

### A. Procedural Requirements

The United States satisfied the procedural requirements. The Clerk entered default on the currency on July 18, 2017. (ECF No. 31.) No potential claimant is a minor, an incompetent person, in military service, or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (*See* Almadani Decl. ¶¶ 10–12; Mot. 10, ECF No. 32.) The United States served the interested parties with this Motion on

October 4, 2017. (Almadani Decl. ¶ 13.) Thus, the United States complied with the procedural prerequisites for entry of default judgment. *See PepsiCo Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (finding that the procedural requirements of Rule 55 and Local Rule 55-1 have been met where plaintiffs address each required factor in their application for default judgment).

**B.     The *Eitel* Factors**

    **1.     Prejudice**

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Taking the United States' allegations as true, the currency meets the statutory definition of the civil forfeiture law and therefore the United States properly seeks to vindicate its rights. Absent entry of default judgment, the United States will be without recourse given Defendants' unwillingness to cooperate and defend. *United States v. Approximately $194,752 in U.S. Currency*, No. C–11–1400 EMC, 2011 WL 3652509, at *3 (N.D. Cal. Aug. 19, 2011). Accordingly, this factor weighs in favor of granting default judgment.

    **2.     Sufficiently Pleaded and Meritorious Claims**

The second and third *Eitel* factors "require that a plaintiff 'state a claim on which [it] may recover.'" *PepsiCo*, 238 F. Supp. 2d. at 1175 (citations omitted); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

"All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical ..., all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation" are subject to forfeiture to the United States. 21 U.S.C. § 881(a)(6). The United States establishes that the DEA seized the currency when it executed a search warrant in the Diaz residence after intercepting a call where a known drug

trafficker instructed Diaz on how to distribute the funds from narcotics sales. (Compl. ¶ 10.) Thus, the currency is subject to forfeiture.

Civil forfeiture actions are governed by the Supplemental Rules. Supp. Rule A(1)(b). The United States satisfied these requirements, too. First, the Complaint must be verified, provide adequate specificity regarding the property seized, explain the Court's subject-matter jurisdiction over the property, identify the statute under which the forfeiture action is brought, and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2). The Complaint is verified by DEA agent Suzanne Hindman-Hauck, and it states the Court's subject-matter jurisdiction over the action under 28 U.S.C. §§ 1345 and 1355. *See* 28 U.S.C. § 1345 ("[T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States...."). The Complaint also identifies the statute under which the forfeiture action is brought, and states sufficiently detailed facts to support a reasonable belief that the United States would meet its burden of proof at trial, as noted above.

The United States also published notice as required under Supplemental Rule G(4). It posted notice of the seizure, forfeiture, and claim proceedings on the official government forfeiture website (www.forfeiture.gov) for at least thirty consecutive days beginning on November 21, 2016. (Almadani Decl. ¶ 3.) The published notice described the currency, stated the times in which to file a claim or an answer, and provided the name of the relevant government attorney. (*Id.*, Ex. A.)

The Government is also required to notify "any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. R. G(4)(b)(i). The notice "must be sent by means reasonably calculated to reach the potential claimant" and "may be sent to the potential claimant or to the attorney representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case." Supp. R. G(4)(b)(iii). The Government complied with the personal notice

requirements. The Government sent notices to both claimants with a claim letter describing the Defendant currency seized and giving notice as to the time within which a claim and answer were required to be filed, as described above. (Almadani Decl. ¶¶ 5–10.) Copies of the Complaint and the notice of seizure were also provided. (*Id.*) Therefore, the United States complied with the Supplemental Rules, and established it has a meritorious claim.

### 3. Amount at Stake

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. The United States seeks to recover $16,284.00, which is not so large a sum as to preclude entry default judgment.

### 4. Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are in dispute. *Eitel*, 782 F.2d at 1471–72. The allegations in the United States' Complaint are presumed true, and there is no opposition to the Application. Accordingly there is not a high likelihood of disputed facts.

### 5. Default Due to Excusable Neglect

The seventh *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect. *Eitel*, 782 F.2d at 1471–72. Given the extensive notice requirements in a civil forfeiture action, and Maria Diaz's failure to respond to the Court's Order, there is little chance that the potential claimants' default is due to excusable neglect.

### 6. Policy of Deciding Cases on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. While this factor will always disfavor the entry of judgment, it alone does not outweigh the other factors that clearly favor entry of judgment. *PepsiCo*, 238 F. Supp. 2d at 1177. The Court thus concludes that the *Eitel* factors favor the Court entering a default judgment.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the United States' Motion for Default Judgment. (ECF No. 32.) The Court will issue a judgment.

**IT IS SO ORDERED.**

January 3, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**